UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO IMPORT, INC., an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-cv-1534 |
| v. | ) | |
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, an Indiana Corporation; and DURACELL U.S. OPERATIONS, INC.; a Delaware Corporation, | ) ) ) ) ) | Jury Demanded |
| Defendants. | ) ) | |

## COMPLAINT

NOW COMES the Defendant, CHICAGO IMPORT, INC., ("Plaintiff" or "Chicago Import"), through its attorneys, Mark Roth and Kenneth Hurst of Roth Fioretti LLC, and for its Complaint against Selective Insurance Company of South Carolina ("Selective"), states:

### PARTIES

1. Chicago Import is a corporation incorporated in the State of Illinois, with its principal place of business in Chicago, Illinois.

2. Selective is a corporation incorporated in the State of Indiana, with its principal place of business in New Jersey. Selective is licensed to issue insurance policies in the State of Illinois.

3. Duracell U.S. Operations, Inc. ("Duracell"), is a Delaware corporation, with its principal place of business in Connecticut. Duracell is named as a necessary party, to be bound by any decision rendered in this action.

1

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the Complaint pursuant to 28 U.S.C. § 1332, as complete diversity exits between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000. The suit also requests at declaratory judgment pursuant to 28 U.S.C. § 2201. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred within this District.

## THE UNDERLYING DURACELL LAWSUIT

5. Duracell filed a Complaint against Chicago Import on October 11, 2017 ("Duracell's Original Complaint"). The Original Complaint was filed in the District Court for the Northern District of Illinois, Eastern Division, under case No. 17-cv-7354 ("Duracell Litigation). A true and correct copy of Duracell's Original Complaint is attached hereto as Exhibit "A".

6. Duracell filed an Amended Complaint in the litigation on December 21, 2017 ("Amended Complaint"). A true and correct copy of the Amended Complaint is attached here to as Exhibit "B".

7. The Original Complaint and the Amended Complaint contain various allegations related to Chicago Import's alleged misappropriation of Duracell's advertising ideas and packaging in Chicago Import's own advertising. The Amended Complaint also alleged various facts that Chicago Import engaged in false advertising and misappropriated Duracell's trade dress.

## THE INSURANCE POLICIES

8. Selective issued general liability policies of insurance to Chicago Import. Selective issued policies of general liability insurance and commercial umbrella coverage under policy No. S 2195138, with continuous policy periods from September 3, 2015 to September

2018. The general liability and umbrella policies are collectively referred to as the "Policies." A true and correct copy of the Policies is attached as Exhibit "C".

The Policies are written contracts between Selective and Chicago Import.

9. The Policies contains the following relevant terms and conditions:

General Liability Coverage:

### SECTION I – COVERAGES…

…

**COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:
**(1)** The amount we will pay for damages is limited as described in **Section III — Limits Of Insurance**; and
**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B**.
**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### SECTION II – WHO IS AN INSURED

**1. If you are designated in the Declarations as:**
**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured.

**SECTION V. DEFINITIONS**, contains the following definition of "advertising injury":

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

3

**a.** False arrest, detention or imprisonment;
**b.** Malicious prosecution;
**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
**f.** The use of another's advertising idea in your "advertisement"; or
**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

10.     The policy contains the following definition of "Advertisement":


**SECTION V — DEFINITIONS, also states:**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and
**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

11.     The Umbrella policy provides the following terms and conditions:

### SECTION I — COVERAGES

**A. Insuring Agreement**
        **1.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any

"occurrence" or offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend…

### SECTION II – WHO IS AN INSURED

**1. If you are designated in the Declarations as: …**

…
d. An organization other than a partnership, joint venture or limited liability company, you are an insured.

### SECTION V — DEFINITIONS…

…

**13.** "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one more of the following offenses:
**a.** False arrest, detention or imprisonment;
**b.** Malicious prosecution;
**c.** Wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies; committed by or on behalf of its owner, landlord or lessor;
**d.** Oral or written publication in any manner of material that violates a person's right of privacy; or
**e.** Oral or written publication in any manner of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or service.
**f.** The use of another's advertising idea in your "advertisement"; or
**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".
**h.** Discrimination because of race, religion, age, sex or physical disability.
This does not apply:
**(1)** To offenses committed by or at the direction of the insured…committed during the policy period.

### SECTION V — DEFINITIONS, also states:

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
> **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and
> **b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

## CHICAGO IMPORT'S TENDER OF DEFENSE AND SELECTIVE'S DENIAL

12.   Chicago Import tendered its defense to Selective on October 13, 2017.

13. Selective denied Chicago Import's tender of defense to the Original Complaint is a letter dated January 4, 2018.

14. Chicago Import tendered its defense to Duracell's Amended Complaint to Selective on January 19, 2018.

15. Selective denied Chicago Import's tender of defense to Duracell's Amended Complaint is an email dated January 25, 2018.

16. Chicago Import again tendered its defense to Selective on February 2, 2018. Selective denied that tender.

17. Selective has refused to defend Chicago Import in the Duracell Litigation, and has refused to defend Chicago Import against the allegations contained in the Original Complaint and the Amended Complaint.

## ALLEGATIONS IN DURACELL'S COMPLAINTS

18. The Original Complaint contained allegations asserting that Chicago Import used Duracell's advertising idea in Chicago Import's advertisement, and Chicago Import's misappropriation of Duracell's trade dress.

19. By way of illustration only and not to be a comprehensive recitation, the Original Complaint contained the following allegations, among others, that triggered Selective's duty to defend and indemnify Chicago Import:

> 1. Duracell manufactures and distributes multiple types of alkaline batteries (such as AAA, AA, C, D, and 9V). Among these are batteries that are manufactured for sale to retail consumers in the United States ("U.S. Batteries"). These batteries feature various material consumer benefits, including a guarantee and warranty as well as distinct packaging that provides information about the guarantee and warranty, warning labels, and contact information for Duracell's United States customer service department.
> 2. Duracell also manufactures batteries for sale and use in foreign countries ("Foreign Batteries"). These batteries, which are sold to retail consumers in other countries, do not have the guarantee and warranty that accompany U.S. Batteries. Foreign Batteries are also sold in packaging that uses Duracell's foreign trademarks (often

6

including a depiction of a pink bunny (the "Duracell Bunny") or a brown bear (the "Duracell Bear")). The Foreign Batteries' packaging uses foreign languages instead of English and lists contact information for foreign customer service call centers rather than United States call centers, which cannot be accessed by United States consumers. Accordingly, Foreign Batteries are materially different from U.S. Batteries.

3. Defendant Chicago Import is engaged in a deceptive scheme in which it offers Foreign Batteries for sale alongside U.S. Batteries and leads United States consumers to believe that all Duracell batteries they purchase from Chicago Import come with all of the benefits accompanying U.S. Batteries. As a result, United States consumers are likely to be confused and disappointed when they discover that the products they have purchased from Chicago Import do not have these benefits they have come to expect from the Duracell brand.

33. Defendant Chicago Import is currently offering Foreign Batteries for sale within the United States. Below are images of Foreign Batteries being offered for sale by Chicago Import. These Images were taken from Chicago Import's website, http://www.chicagoimportinc.net/batteries.html.

34. As shown in these images from Chicago Import's website, it is currently offering multiple different types and sizes of Foreign Batteries for sale from its location within the United States. The packaging for these products is different from Duracell's U.S. Batteries, as it contains foreign languages, advertising claims not intended for the United States market, non-United States customer service contact information, and depicts the Duracell Bunny that Duracell does not use on packaging in the United States.

37. Among the products purchased from Defendant Chicago import were 9V batteries that initially appeared to be U.S. Batteries, as shown below:

38. However, upon further inspection, Duracell discovered that the packaging for these 9V batteries (including the cardboard "card" to which the battery is affixed and the inner cardboard container holding 12 cards) is an unauthorized counterfeit reproduction of Duracell's United States' packaging and was neither manufactured by nor authorized to be manufactured on behalf of Duracell® Marks and is plainly misleading to consumers. The counterfeit packaging contains unauthorized reproductions of the Duracell® Marks and is plainly misleading to consumers.

44. Moreover, Defendants' sale of batteries in counterfeit packaging is likely to cause consumer confusion because consumers will be misled into believing that the packaging bearing the Duracell® Marks was created by or otherwise authorized by Duracell. Additionally, because Defendants are selling batteries in counterfeit packaging, Duracell cannot ensure that the batteries contained therein will reach customers in a safe and undamaged manner.

20. The Amended Complaint contains allegations asserting that Chicago Import used Duracell's advertising in Chicago Import's own advertisement, and Chicago Import misappropriated Duracell's trade dress.

7

21. By way of illustration only and not to be a comprehensive recitation, the Amended Complaint contains the following allegations, among others, that trigger Selective's duty to defend and potentially indemnify Chicago Import:

> 5. The Defendants are engaged in a deceptive scheme in which they offer OEM Batteries and/or Foreign Retail Batteries for sale alongside U.S. Retail Batteries and lead United States consumers to falsely believe that all Duracell batteries purchased from the Defendants come with all of the benefits that accompany U.S. Retail Batteries. As part of this scheme, some of the Defendants are also selling and shipping Duracell batteries in counterfeit packaging that has not been manufactured by or on behalf of Duracell. As a result of the Defendants' actions, United States consumers are likely to be confused and disappointed when they discover that the products they have purchased do not have the benefits they have come to expect from the Duracell brand.
>
> 6. Based on the Defendants' unlawful actions, Duracell asserts claims for trademark infringement and trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114; false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); common law trademark infringement and unfair competition; and violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.
>
> 45. Duracell places great importance on its retail customers receiving the best possible product experience and being fully apprised of the guarantees and/or warranties covering the batteries they purchase. To this end, Duracell carefully designs and controls the packaging and labeling of U.S. Retail Batteries. This packaging provides information in the English language about Duracell's Battery Guarantee, Duracell's standard ten-year retail consumer warranty, contact information for Duracell's United States customer service department, and label warnings. The packaging for U.S. Retail Batteries is also carefully designed, evaluated, and controlled to ensure that batteries will be safely shipped to retail consumers.
>
> 46. OEM Batteries, however, are not packaged in this manner.
>
> 52. Additionally, many of Duracell's Foreign Retail Batteries are marketed and sold in packaging that bears an image of the Duracell Bunny or Duracell Bear in addition to the Duracell® Marks. Duracell does not use the Duracell Bunny or Duracell Bear on product packaging in the United States, but Duracell does use the Duracell Bunny on packaging in many territories outside of the United States.
>
> 57. Duracell also purchased from Chicago Import products in counterfeit packaging. Among the products Duracell purchased from Chicago Import were 9V batteries that initially 3. Duracell also manufactures batteries that are sold only to Original Equipment Manufacturers ("OEMs") ("OEM Batteries"). OEMs use the batteries as accessories accompanying or installed in electronic products that they manufacture. OEM Batteries, which are labeled with

the words "Original Equipment Accessory" and/or "Not For Retail Sale," do not have the guarantee and warranty that accompany U.S. Retail Batteries and also lack the informational and protective packaging used for U.S. Retail Batteries. Accordingly, OEM Batteries are materially different from U.S. Retail Batteries.

58. Upon further inspection, however, Duracell discovered that the packaging for these 9V batteries (including the cardboard "card" to which the battery is affixed and the inner cardboard container holding 12 cards) is an unauthorized counterfeit reproduction of Duracell's United States' packaging and was neither manufactured by nor authorized to be manufactured on behalf of Duracell. This counterfeit packaging contains unauthorized reproductions of the Duracell® Marks and is plainly misleading to consumers because it attempts to pass itself off as genuine Duracell packaging—when it is not.

83. The Defendants, without authorization from Duracell, are unlawfully selling and offering for sale counterfeit packaged Duracell batteries, OEM Batteries, and/or Foreign Retail Batteries bearing the Duracell® Marks, including through Internet sites.

86. In addition to OEM Batteries and Foreign Retail Batteries, Defendants have also sold Duracell batteries in counterfeit reproductions of Duracell's United States' packaging. This counterfeit packaging contains unauthorized reproductions of the Duracell® Marks and is plainly misleading to consumers because it attempts to pass itself off as genuine Duracell packaging—when it is not.

90. Moreover, the Defendants' sale of batteries in counterfeit packaging is likely to cause consumer confusion because customers will be misled into believing that the packaging bearing the Duracell® Marks was created by or authorized by Duracell. Additionally, because Defendants are selling batteries in counterfeit packaging, Duracell cannot ensure that the batteries contained therein will reach customers in a safe and undamaged manner.

92. Duracell is entitled to injunctive relief because Defendants will otherwise continue to infringe its trademarks and unlawfully pass off counterfeit packaging, OEM Batteries, and Foreign Retail Batteries as if they are genuine U.S. Retail Batteries. The Defendants' ongoing illegal conduct has caused and will continue to cause irreparable harm to the Duracell® Marks, to Duracell's reputation and goodwill, and to the business of Duracell and its distributors.

99. Similarly, the Foreign Retail Batteries sold by Chicago Import, Price Master, Central Supply, CVS, Elegant Trading, Huaraz Corp., Yahya Trading, and Zalmen Reiss are materially different from U.S. Retail Batteries because they do not have Duracell's Battery Guarantee, they do not have Duracell's standard ten-year retail consumer warranty, their packaging contains advertising claims not applicable to the United States market, their packaging contains images of the Duracell Bunny or Duracell Bear that Duracell does not use in the United States, their packaging contains foreign language text not used in Duracell's United States packaging, and their packaging lacks contact information for Duracell's United States customer service department.

9

> 109. Defendants' advertisements and promotions of their products unlawfully using the Duracell® Marks have been disseminated to the relevant purchasing public.
> 149. Defendants' unauthorized use of the Duracell® Marks on counterfeit packaging bearing counterfeit trademarks in connection with their advertisement, promotion, sale, offering for sale, and distribution of goods on the Internet and at physical store locations constitutes use of the Duracell® Marks in commerce.

22. Duracell's Amended Complaint alleges various causes of action, including but not limited to claims for false advertising (second cause of action), Unfair competition (third cause of action), Uniform Deceptive Trade Practices Act (seventh cause of action).

23. Coverage exists under the Policies for "Advertising Injury" under the allegations contained in the Original Complaint and the Amended Complaint.

24. The cardboard card on which the batteries are affixed as alleged in the Original Complaint and the Amended Complaint is an advisement under the policy.

25. The inner cardboard container holding 12 cards as alleged in the Original Complaint and the Amended Complaint is an advertisement under the Policy.

26. Chicago Import's alleged offering for sale Duracell batteries through Internet sites constitutes an advertisement under the Policies.

27. Trade dress refers to characteristics of the visual appearance of a product or its packaging, and the Original Complaint and the Amended Complaint allege facts related to Chicago Import's infringement of Duracell's trade dress.

## COUNT I

### Breach of Contract as to Original Complaint

28. Plaintiff realleges and reasserts its allegations contained in paragraphs 1 to 27 as and for the allegations for paragraphs 28, as if fully set for the herein.

29. The allegations contained in the Original Complaint triggered Selective's duty to defend Chicago Import under the "Advertising Injury" coverage contained in the Policies.

30. Selective breached its duty to defend Chicago Import for the allegations contained in the Original Complaint.

31. Chicago Import performed all of its obligations under the Policies, including by paying the Policies' premiums and timely notifying Selective of the claim.

32. Chicago Import incurred attorney's fees and costs in defense of Duracell's Original Complaint after the date on which Chicago Import tendered its defense to Selective. Selective had a duty under the Polices to pay those fees and costs, and accordingly Chicago Import has been damaged in the amount of fees and costs incurred after its tender of defense in Duracell's Original Complaint.

Wherefore, the Plaintiff, Chicago Import, Inc., requests that this Court enter judgment in its favor and against the Defendant, Selective Insurance Company of South Carolina, in an amount to be determined at trial, prejudgment interest and costs. Plaintiff also request such other and further relief as this Court deems just.

## COUNT II

**Declaratory Judgment as to Duracell's Original Complaint and Amended Complaint**

33. Plaintiff realleges and reasserts its allegations contained in paragraphs 1 to 32 as and for the allegations for paragraphs 33, as if fully set for the herein.

34. The allegations contained in Duracell's Original Complaint and Amended Complaint triggered Selective's duty to defend Chicago Import under the "Advertising Injury" coverage contained in the Policies and further obligate Selective to indemnify Chicago Import for any settlement or judgment in the underlying Duracell Litigation.

35. Selective Insurance denies that it has a duty to defend Chicago Import in the Duracell litigation.

Therefore, an actual and justiciable controversy exists between Chicago Import and Selective.

Wherefore, Chicago Import requests that this Court declare the rights of Chicago Import and Selective as follows:

a. Declare that Selective has a duty to defend Chicago Import in the Duracell Litigation, including through the payment of Chicago Import's attorney's fees and costs incurred by attorneys chosen by Chicago Import to defend the Duracell Litigation;

b. Declare that Selective has a duty to indemnify Chicago Import in the Duracell Litigation;

c. Declare that Selective breached its duty to defend Chicago Import for allegations contained in the Original Complaint; and

d. Declare that Selective is estopped from raising any defenses to coverage under the Policies.

e. Enter such other and further relief as this Court deems just.

## COUNT III

### Breach of Contract as to Duracell's Amended Complaint

36. Plaintiff realleges and reasserts its allegations contained in paragraphs 1 to 35 as and for the allegations for paragraphs 36, as if fully set for the herein.

37. The allegations contained in the Amended Complaint triggered Selective's duty to defend Chicago Import under the "Advertising Injury" coverage contained in the Policies.

38. Selective breached its duty to defend Chicago Import for the allegations contained in the Amended Complaint.

39. Chicago Import performed all of its obligations under the Policies, including by paying the Policy's premiums and timely notifying Selective of the claim.

40. Chicago Import incurred attorney's fees and costs in defense of Duracell's Amended Complaint after the date on which Chicago Import tendered its defense to Selective. Selective had a duty under the Polices to pay those fees and costs, and accordingly Chicago Import has been damaged in the amount of fees and costs incurred after its tender of defense in Duracell's Amended Complaint and going forward.

Wherefore, the Plaintiff, Chicago Import, Inc., requests that this Court enter judgment in its favor and against the Defendant, Selective Insurance Company of South Carolina, in an amount to be determined at trial, prejudgment interest and costs. Plaintiff also request such other and further relief as this Court deems just.

## COUNT IV

### Violation of Illinois Insurance Code

41. Plaintiff realleges and reasserts its allegations contained in paragraphs 1 to 40 as and for the allegations for paragraphs 41, as if fully set for the herein.

42. Selective has knowingly and intentionally refused to provide insurance coverage to the Chicago Import, in breach of its obligations set forth in the Policies.

43. Selective's refusal to provide coverage was and continues to be vexatious and unreasonable because the duty to defend is determined by the "four corners" of the complaint.

44. The allegations contained in the four corners of both the Original Complaint and the Amended Complaint triggered Selective's duty to defend Chicago Import.

45. Further, the particular cause of action plead in a complaint is not a determinative of whether coverage has been triggered. Instead, an insurance carrier's duty to defend is triggered if <u>any</u> of the facts alleged in the complaint are covered.

46. Selective's refusal to defend Chicago Import as alleged herein violates those fundamental tenants of insurance coverage law. Selective's insurance coverage position is frivolous, because facts alleged in the Original Complaint and the Amended Complaint trigger coverage under the Policies.

47. Chicago Import has been harmed by Selective's actions and has suffered damages and will continue to incur damages.

Wherefore, the Chicago Import prays that this Court order Selective, pursuant to Section 155 of the Illinois Insurance Code (215 ILCS 5/155), as follows:

a. To reimburse and indemnify the Chicago Import for all attorneys' fees incurred related to the Duracell lawsuit;

b. To reimburse and indemnify the Chicago Import for all costs incurred related to the Duracell lawsuit;

c. To reimburse and indemnify the Chicago Import for all attorneys' fees incurred related to this pending action;

d. To reimburse and indemnify the Chicago Import for all costs incurred related to this pending action;

e. To award the Chicago Import the maximum additional amounts awardable under §155 of the Illinois Insurance Code;

## JURY DEMAND

Plaintiff demands a jury trial.

Respectfully submitted,

/s/Mark D. Roth
Attorney for Plaintiff


Mark D. Roth, Esq.
Kenneth Hurst
Roth Fioretti LLC
311 S. Wacker, Suite 2470
Chicago, IL 60606
(312) 922-6262
markdroth@gmail.com
ken@rothfioretti.com